Gina T. OAKDEN, Appellant (Plaintiff),

v.

Norman ROLAND, M.D., Appellee (Defendant).

No. 98–304.

Supreme Court of Wyoming.

Oct. 18, 1999.

Representing Appellant: Mark W Harris of Harris Law Firm, P.C., Evanston, Wyoming.

Representing Appellee: Robert G. Wright and Curtis J. Drake of Richards, Brandt, Miller & Nelson, Kemmerer, Wyoming.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and HILL, JJ.

MACY, Justice.

Appellant Gina Oakden appeals from an order granting summary judgment in favor of Appellee Norman Roland, M.D.

We affirm.

## ISSUES

Oakden presents a lone issue for our review:

Did the district court err in determining that no genuine issue of material fact existed and that Roland was entitled to judgment as a matter of law?

## FACTS

On October 14, 1994, Dr. Roland was performing a laparoscopic procedure on Oakden in IHC Evanston Regional Hospital to remove her gall bladder when the electrosurgical irrigating suction probe that he was using became bent and inadvertently fired, causing a small defect in Oakden's common hepatic duct. The doctor was forced to convert the laparoscopic procedure to an open procedure. After the surgery, Oakden was transferred to LDS Hospital in Salt Lake City, Utah, where she was treated for the complications which arose from the injury to her common hepatic duct.

Oakden filed suit against Dr. Roland, alleging that his care and treatment fell below the applicable standard of care. Dr. Roland filed a motion for summary judgement, asserting that Oakden· had failed to set forth expert testimony to establish the requisite elements of a *prima facie* case of negligence against him. The district court granted Dr. Roland's motion, and Oakden appeals from that decision.

## STANDARD OF REVIEW

Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to a judgment as a matter of law. *Wolter v. Equitable Resources Energy Company, Western Region,* 979 P.2d 948, 951 (Wyo. 1999); *see also* W.R.C.P. 56(c). A genuine issue of material fact exists when a disputed fact, if it were proven, would establish or refute an essential element of a cause of action or defense that the parties have asserted. *Marchant v. Cook,* 967 P.2d 551, 554 (Wyo.1998). We evaluate the propriety of a summary judgment by employing the same standards and by using the same materials as were employed and used by the lower court. *Kirkwood v. CUNA Mutual Insurance Society,* 937 P.2d 206, 208 (Wyo.1997).

The movant bears the initial burden of establishing a *prima facie* case for summary judgment. *Marchant,* 967 P.2d at 554. If the movant carries his burden, the party who is opposing the motion for a summary judgment must present specific facts to demonstrate that a genuine issue of material fact does exist. *Id.* We review the record in the light most favorable to the nonmoving party, giving that party the benefit of all favorable inferences which may be drawn from the facts. *Austin v. Kaness,* 950 P.2d 561, 563 (Wyo.1997).

## DISCUSSION

The district court found that the evidence which Oakden relied upon in opposing Dr. Roland's motion for summary judgment was inadmissible and, even if admitted, would not demonstrate that Dr. Roland was negligent in treating Oakden. Oakden insists that, when the evidence is viewed in the light most favorable to her, it establishes a question of fact as to whether Dr. Roland deviated from the applicable standard of care. Dr. Roland counters that Oakden failed to come forward

with expert witness or other admissible testimony to establish the requisite elements of a *prima facie* case of negligence against him.

 In order to defeat a motion for summary judgment in a medical malpractice action, a plaintiff:

> "has the obligation to establish (1) the accepted standard of medical care or practice, (2) that the doctor's conduct departed from the standard, and (3) that his conduct was the legal cause of the injuries suffered." *Orcutt v. Miller*, Nev., [95 Nev. 408] 595 P.2d 1191, 1193 (1979).

*Harris v. Grizzle*, 625 P.2d 747, 751 (Wyo. 1981). In medical malpractice cases, "expert medical testimony is ordinarily required to establish negligence or lack of reasonable care on the part of a physician or surgeon in his medical diagnosis, his performance of surgical procedures, and his care and treatment of patients." 625 P.2d at 753. The mere fact that an injury or bad result occurred is not proof that negligence occurred. 625 P.2d at 749.

██ In order to settle this issue, we must examine the evidence which Oakden relies upon in arguing that she established a *prima facie* case of negligence. She directs our attention to the testimony of two physicians who testified about comments that a third physician apparently made to them. Gary T. Baldwin, M.D., an obstetrician/gynecologist, testified that Gregory M. Yasuda, a general, vascular, and laparoscopic surgeon, told him he "didn't feel that Roland knew what he was doing with the laparoscope." Michael Adams, M.D., a family practitioner, testified that Dr. Yasuda "did not feel, in retrospect, that it was appropriate for a relatively inexperienced person in the laparoscopic arena to [attempt a laparoscopic procedure]."

Oakden also relies upon a written evaluation submitted by Dr. Yasuda concerning Dr. Roland's hospital privileges and whether they should be renewed in which he stated that he did not feel Dr. Roland was "qualified by training and experience to perform the privileges requested." He further explained:

> [M]oderately complex surgical problems or complications proved to be a somewhat more difficult situation for him to handle. I am uncertain as to his CME credits or programs but there appears to be a significant deficit in several areas including pediatric trauma and laparoscopic surgical techniques. Questions have also been raised about his intraoperative surgical judgment from at least one other respected medical staff member. One of these situations which arose while I was out of town has culminated in a formal lawsuit at the present time and there are formal inquiries from yet another. For these and other reasons I have chosen not to continue utilizing Dr. Roland's services and have very strong reservations in having him cover my patients in the future should his privileges somehow be renewed.

Dr. Roland directs our attention to the evidence which he contends established that no genuine issues of material fact existed with regard to his care of Oakden. He points out that Oakden's designated expert witness, Scott Leckman, M.D., a general surgeon, testified that his care of Oakden did not violate or fall below the applicable standard of care:

> A. I'm sure—well, I imagine what I told [Oakden's counsel] was that I didn't see too much in the case.
>
> Q. What do you mean by you "didn't see too much in the case"?
>
> A. As far as he was interested in whether there had been malpractice committed.
>
> . . . .
>
> Q. After you reviewed that material, you did opine to [Oakden's counsel] you saw no—what you termed as malpractice; is that correct?
>
> A. Correct.
>
> Q. So, I would assume you did opine to [Oakden's counsel] that you did not see anything Dr. Roland did or did not do that would be a breach of the applicable standard of care?
>
> A. Correct.
>
> . . . .
>
> Q. During any of your conversations with [Oakden's counsel], Dr. Leckman, have you ever offered him opinions that

Dr. Roland breached the applicable standard of care in any of his care of Gina Oakden?

A. No.

Q. So do you have any opinions, whatsoever, that Dr. Roland breached any applicable standard of care in any of his treatments of Gina Oakden?

A. No.

Dr. Leckman explained that an injury to the common hepatic duct is a risk associated with the laparoscopic removal of a gall bladder:

A. Injury to the bile ducts—

Q. Right.

A. —occurs with this type of surgery and occurs about one percent of the time.

Q. Right.

A. And it was clearly stated on the consent form that that was a risk of the operation.

Q. So, the fact that the injury to the bile duct occurred does not constitute a breach of the applicable standard of care?

A. Correct.

Q. I would assume you have no opinions, then, that you're willing to offer that anything Dr. Roland did operatively during the laparoscopic portion of it or during the open portion of the [removal of the gall bladder] was a breach of the standard of care?

A. No.

Dr. Leckman further testified that Dr. Roland's use of sutures to repair the hepatic duct, his postoperative follow-up care, his use of a Jackson Pratt drain, and his decision to not use preoperative or intraoperative cholangiogram fell within the applicable standard of care. Dr. Leckman summed up his opinion regarding the incident as follows:

Q. Give me, then, if you have any opinions in this matter, what those opinions would be as far as what you've reviewed or from what you've reviewed, what you've learned, or what you've been told or otherwise. You've been designated as an expert and I'm curious as to what opinions you are willing to offer in this matter.

A. Okay. My summary would be ... that Dr. Roland had an unintentional injury to the bile duct and that postoperatively the—it appears that the—that there was a bile leak from where the injury occurred. It was controlled with a drain, and that postoperatively the patient had problems which ultimately led to her transfer to LDS Hospital. And there she had, again, some unintended complications related to her treatment there and all of these complications were risks that related to the procedures that she received.

Q. Anything else?

A. My other opinion would be that while I can—that there would be other options, as far as additional care, other than what she received at LDS Hospital. Another alternative would be to have left things alone, just left the drain in place to control the bile leak until it healed, which is also—which also would have been an option in the case.

Dr. Roland also emphasizes that neither Dr. Baldwin, Dr. Adams, nor Mark E. Boschert, M.D., an internist and gastroenterologist, rendered an opinion that his care fell below the applicable standard of care or that his treatment was the proximate cause of Oakden's damages. Dr. Roland finally cites the testimony of his designated expert, Steven Mintz, M.D., a general surgeon who testified that, on the basis of his thorough review of the relevant records, it was his opinion that "Dr. Roland met the standard of care in all aspects in the treatment provided to Ms. Oakden."

We will not conduct a tortured analysis about whether the evidence which Oakden relied upon was admissible because we agree with the district court's finding that the evidence, even if admitted, would not establish the accepted standard of medical care or practice, show that Dr. Roland departed from that standard in treating Oakden, or prove that Dr. Roland's treatment was the legal cause of Oakden's injuries. Instead of producing evidence regarding these three required elements, Oakden attempts to demonstrate the existence of a genuine issue of material fact by presenting evidence that another doctor might have felt Dr. Roland was not sufficiently experienced in the procedure he performed on Oakden.

This evidence is not helpful in this particular situation because it does not pertain to the applicable standard of care nor does it demonstrate how Dr. Roland might have deviated from that standard during the procedure.

We hold that Oakden has failed to demonstrate that genuine issues of material fact existed. The district court properly granted a summary judgment in favor of Dr. Roland.

Affirmed.