2003 WY 48

**CORDERO MINING COMPANY, a Delaware corporation; Transcontinental Insurance Company, a New York corporation; and Continental Casualty Company, an Illinois corporation, Appellants (Plaintiffs),**

v.

**UNITED STATES FIDELITY AND GUARANTEE INSURANCE COMPANY, a Minnesota company; and The Barlow Agency, a Wyoming corporation, Appellees (Defendants).**

No. 02–72.

Supreme Court of Wyoming.

April 15, 2003.

618

Jeffrey S. Wittebort of Walberg, Dagner & Tucker, P.C., Centennial, Colorado; and Paul Kapp, Cheyenne, Wyoming, Representing Appellants.

Judith Studer of Schwartz, Bon, Walker & Studer, Casper, Wyoming, Representing Appellee United States Fidelity and Guarantee Insurance Company.

Timothy W. Miller of Reeves & Miller, Casper, Wyoming, Representing Appellee The Barlow Agency.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Cordero Mining Company (Cordero), a subsidiary of Kennecott Energy Company (Kennecott), contracted for work to be done at its mine in Campbell County. The general contractor and subcontractor were required to procure insurance naming Cordero as an additional insured. However, the subcontractor's policy failed to do so. After settling claims made against Cordero by an injured worker, the general contractor's insurer, Transcontinental Insurance Company and Continental Casualty Company (together CNA), and Cordero filed claims against the subcontractor's insurer, United States Fidelity and Guarantee Insurance Company (USF & G), and its agent, The Barlow Agency (Barlow), including claims for reformation of the insurance policy, negligence in failing to name Cordero, and breach of contract on the basis that Cordero was an intended third-party beneficiary. The district court granted summary judgment for USF & G and Barlow as to all claims. We affirm the summary judgment but on different grounds than those relied upon by the district court.

## ISSUES

[¶ 2] From the parties' lengthy statements of the issues, we find the following issues determinative:

1. Whether Cordero was an intended third-party beneficiary of, first, Barlow's promise to procure insurance for the subcontractor from USF & G and, second, the insurance policy issued to the subcontractor by USF & G; and

2. Whether the subcontractor's acceptance of the policy naming Kennecott as an additional insured defeats the third-party beneficiary and negligence claims.

## FACTS

[¶ 3] Cordero contracted with the general contractor, Production Industries Corporation (PICOR), in February of 1997 for construction of a coal loading system for the Rojo mine in Campbell County. The Corde-

ro–PICOR contract required PICOR to obtain insurance naming the "Company Group" as an additional insured. The "Company Group" is defined in the contract as including Cordero, Kennecott, and each of their respective subsidiaries. PICOR obtained insurance from CNA in April of 1997 naming Cordero as an additional insured.

[¶ 4] The Cordero–PICOR contract also required PICOR to ensure that all subcontractors hired to perform work on the project obtained insurance coverage naming the Company Group as an additional insured. By purchase order dated March 3, 1997, PICOR subcontracted with L & T Fabrication & Construction, Inc. (L & T) to construct platforms for the coal loading system. The PICOR–L & T purchase order required L & T to obtain insurance naming PICOR and Cordero as additional insureds. In an attempt to comply with the purchase order, L & T procured insurance from USF & G through Barlow. The certificates issued by USF & G, dated March 19 and 21, 1997, respectively, named PICOR and Kennecott—but not Cordero—as additional insureds.

[¶ 5] L & T understood its contract with PICOR required it to procure insurance naming Cordero as an additional insured and knew the certificate it received from Barlow named Kennecott rather than Cordero as an additional insured. Yet L & T accepted the certificate as written and transmitted it to PICOR. No one contacted L & T or Barlow at the time the certificate was issued concerning the failure to name Cordero as an additional insured. It was not until L & T employee Shayne DeGaugh was seriously injured when a co-worker dropped a steel handrail on his head in August of 1997, approximately four months after the insurance certificate was issued, that Cordero contacted L & T concerning the failure to name it as an additional insured on the certificate.

[¶ 6] After the accident, Mr. DeGaugh filed a negligence claim against Cordero and PICOR. They tendered the defense to L & T's insurer, USF & G, which agreed to defend PICOR but declined to defend Cordero because it was not named as an additional insured on L & T's policy. USF & G ultimately settled the claims against PICOR for $100,000. Cordero also tendered the defense to PICOR's insurer, CNA, which after a number of months accepted the defense and, in May of 1999, settled the claims against Cordero for $3,700,000 plus $400,000 in costs and attorney fees. As part of the settlement agreement, Cordero agreed to pay Mr. DeGaugh twenty percent of any amount recovered by it or CNA from USF & G or L & T. In order to effectuate the latter portion of the agreement, Cordero assigned its rights against USF & G to CNA.

[¶ 7] On October 2, 2000, Cordero and CNA filed an amended complaint against USF & G and Barlow. Cordero alleged claims against USF & G for breach of contract as an additional insured, bad faith, and reformation of contract. CNA, by virtue of Cordero's assignment of its rights, alleged claims against Barlow for negligence in failing to name Cordero as an additional insured and for breach of contract on the theory that Cordero was an intended third-party beneficiary of the USF & G policy. Cordero and CNA sought to recover damages in the amount paid in settlement of Mr. DeGaugh's claim plus costs and attorney fees incurred as a result of the DeGaugh action and in pursuing their claims against USF & G and Barlow. USF & G and Barlow filed motions for summary judgment on all the claims, which the district court granted. On appeal, Cordero and CNA challenge the court's ruling on the breach of contract, reformation, and negligence claims. They do not challenge dismissal of the bad faith claim.

## STANDARD OF REVIEW

[¶ 8] We review orders granting summary judgment according to the following standards:

> Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to judgment as a matter of law. A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which the parties have asserted. We examine the record from the vantage point most favorable to the party who opposed

the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. We evaluate the propriety of a summary judgment using the same standards and materials as the lower court used. We do not accord deference to the district court's decisions on issues of law.

*T.M. Through Cox v. Executive Risk Indemnity Inc.*, 2002 WY 179, ¶ 7, 59 P.3d 721, ¶ 7 (Wyo.2002) (citations omitted).

[¶ 9] When third-party beneficiary claims are reviewed, the real question is whether the contracting parties intended the contract to be for the direct benefit of a third party. *Wyoming Machinery Company v. United States Fidelity and Guaranty Company*, 614 P.2d 716, 720 (Wyo.1980). The intention of the parties is to be gleaned from the contract and the circumstances surrounding its execution. *Richardson Associates v. Lincoln–DeVore, Inc.*, 806 P.2d 790, 809 (Wyo.1991). Questions relating to the parties' intent are usually factual, precluding summary judgment; however, where the parties' intent is clear such that reasonable minds could not differ, summary judgment may be appropriate. *Examination Management Services, Inc. v. Kirschbaum*, 927 P.2d 686 (Wyo.1996); *Detroit Institute of Arts Founders Society v. Rose*, 127 F.Supp.2d 117 (D.Conn.2001).

[¶ 10] We have said summary judgment is not favored in negligence actions and is, therefore, subject to more exacting scrutiny in such cases. *Garnett v. Coyle*, 2001 WY 94, ¶ 6, 33 P.3d 114, ¶ 6 (Wyo.2001). However, summary judgment may be affirmed in negligence cases where the record fails to establish the existence of a genuine issue of material fact. *Id.*

## DISCUSSION

**A. Cordero as a third-party beneficiary of Barlow's promise to obtain insurance for L & T and of the USF & G policy**

[¶ 11] In its decision letter, the district court found Cordero was not a third-party beneficiary of the transaction between L & T and Barlow. Rather, the district court concluded, citing *Wyoming Machinery*, 614 P.2d at 720, Cordero was an incidental beneficiary and as such acquired no right of action against Barlow. Cordero and CNA argue on appeal that the test for third-party beneficiary status contained in *Wyoming Machinery* was overruled in *Richardson Associates*, 806 P.2d 790, and, under the new test, Cordero was a third-party beneficiary to the contract between Barlow and L & T.

[¶ 12] In *Wyoming Machinery*, the court said:

[A] promise may be made to one person for the benefit of another and a third-party beneficiary may enforce his rights under a contract, *although not a party to nor specifically mentioned in the contract;* but there is more to it than that. An outsider claiming the right to sue must show that it was intended for his direct benefit. Otherwise he may be only an incidental beneficiary because the compelling provisions of a contract require that his claims be satisfied in order to protect another. However, an incidental beneficiary acquires no right of action against the promisor or promisee.

614 P.2d at 720 (emphasis added). On the basis of these principles, the court held that construction project subcontractors were not third-party beneficiaries to a surety bond obtained by the general contractor in compliance with its contract with the project owner guaranteeing the general contractor's performance free of liens from subcontractors. The subcontractors argued they were intended third-party beneficiaries because the bond required them to be paid. However, the court concluded that, simply because a party benefits from performance of a contract, it is not automatically a "third party beneficiary" with individual rights to enforce the contract. The real question, the court said, is whether the parties to the contract intended a direct benefit to a third party; absent evidence of such intent, the party is an incidental beneficiary with no enforceable rights under the contract. *Id.* Applying this test, the court held the subcontractors were not intended third-party beneficiaries because the contracting parties' intent was to benefit the owner by assuring a lien free project.

[¶ 13] Subsequently, in *Richardson Associates,* the court concluded a project architect and mechanical engineer were not third-party beneficiaries to a contract between the project contractor and the soil lab. 806 P.2d at 807. In reaching that result, the court applied Restatement (Second) of Contracts, which provides:

(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.

Restatement (Second) of Contracts § 302 at 439–40 (1981). Applying this test, the court upheld the dismissal of the third-party beneficiary claim on the ground that the architect and engineer failed to adequately allege the soil lab undertook testing for their benefit and, therefore, failed to state a claim that they were anything more than incidental beneficiaries to the contract between the soil lab and the contractor. In reaching this result, the court noted the focus of § 302 is the intent of the contracting parties rather than reliance by the beneficiary. *Wyoming Machinery* likewise focused on the contracting parties' intent. Thus, rather than overruling *Wyoming Machinery,* the court in *Richardson Associates* merely applied the Restatement's more recent expression of the basic rule applied earlier in *Wyoming Machinery.* Thereafter, in *Bear v. Volunteers of America, Wyoming, Inc.,* 964 P.2d 1245, 1252 (Wyo.1998), the court cited both *Wyoming Machinery* and *Richardson Associates* in addressing a third-party beneficiary claim.

■ [¶ 14] Having clarified that *Wyoming Machinery* has not been overruled, we turn to application of § 302 to the first contract at issue: Barlow's alleged promise to obtain insurance for L & T covering Cordero as an additional insured. To succeed on its claim, CNA[1] was required to demonstrate that, (1) under paragraph (1) of § 302 of the Restatement, recognition of Cordero's alleged right to benefits as an additional insured was appropriate to effectuate the intent of L & T and Barlow; and, (2) under subparagraph (1)(b) of that section, the circumstances indicate L & T intended to give Cordero the direct benefit of being named as an additional insured on the policy. On summary judgment, Barlow had the initial burden of showing no genuine issue of material fact existed on these issues. The burden then shifted to CNA to demonstrate a material dispute as to the parties' intent. In making the requisite showing of intent, the parties were entitled to rely on the language of the insurance policy and the circumstances surrounding the parties at the time of its execution for " 'each case must depend upon the intention of the parties as that intention is to be gleaned from a consideration of all of the contract and the circumstances surrounding the parties at the time of its execution.' " *Richardson Associates,* 806 P.2d at 809 (quoting *People ex rel. Resnik v. Curtis & Davis, Architects & Planners, Inc.,* 78 Ill.2d 381, 36 Ill.Dec. 338, 400 N.E.2d 918, 919 (1980)); *see also Kemmerer Bottling Group, Inc. v. Sentry Equipment Erectors, Inc.,* 1996 U.S. Dist. LEXIS 12642 (N.D.Ill.1996) (third-party beneficiary status must be determined from the contract and the circumstances surrounding the parties at the time of its execution); *Detroit Institute of Arts Founders Society,* 127 F.Supp.2d 117 (the intent of the parties is to be determined from the terms of the contract read in light of the circumstances attending the making of the contract, including the motives and the purposes of the parties).

■ [¶ 15] USF & G has argued strenuously throughout the case that the rules of contract construction apply, meaning

1. As previously noted in this opinion, Cordero assigned its rights against USF & G to CNA in the settlement agreement entered into with Mr. DeGaugh. Thus, although the third-party claim actually belongs to Cordero, it was brought in CNA's name by virtue of the assignment of rights.

that the court must look first at the four corners of the document and, if no ambiguity is found, look no further. USF & G is correct that, in construing or interpreting contracts, the intent of the parties is to be ascertained from the words used and, when a provision is clear and unambiguous, the court looks only to the four corners of the document in determining the parties' intent. *Newman v. RAG Wyoming Land Company,* 2002 WY 132, ¶ 11, 53 P.3d 540, ¶ 11 (Wyo. 2002). However, in interpreting unambiguous contracts, we have consistently looked to surrounding circumstances, facts showing the relations of the parties, the subject matter of the contract, and the apparent purpose of making the contract. *Id.; Central Wyoming Medical Laboratory, LLC v. Medical Testing Lab, Inc.,* 2002 WY 47, ¶ 16, 43 P.3d 121, ¶ 16 (Wyo.2002). Moreover, a third-party beneficiary claim is distinct from other claims based in contract in that it creates a direct action by one not a party to the contract to enforce the contract for its benefit even though that party is not mentioned in the contract itself. In some contracts, the third-party beneficiary is not identified in the contract, and we can and must look to the surrounding circumstances to determine intent. Doing so is not an improper extension of the terms of the contract but rather is a necessary step in effectuating the intent of the parties.

 [¶ 16] Among the surrounding circumstances which must be considered in determining intent to benefit a third party are contracts executed in conjunction with the contract giving rise to the third-party beneficiary claim. Thus, in *Wyoming Machinery,* the court construed the surety contract from which the third-party beneficiary claim arose in conjunction with the construction contract pursuant to which it was executed. 614 P.2d at 719–20. When we apply this standard in the present case, we conclude Barlow's promise to procure insurance for L & T must be considered in conjunction with the contracts giving rise to the request for insurance—the PICOR–L & T purchase order and the Cordero–PICOR contract.

 [¶ 17] Before considering those contracts, we note the general rule that an injured third party has an enforceable right against an insurer if a liability policy is so worded as to indicate it was executed for the protection of third persons; it is only where the policy makes it clear it is intended solely for the protection of the promisee that a third party has no enforceable right under the policy. 9 Arthur Linton Corbin, Corbin on Contracts § 807 at 188–89 (Interim Ed.1979). Where the words of the policy are not clearly to the contrary, a liability policy should be held to be for the protection of third parties as well as the beneficiary. *Id.* at 192. A number of courts have applied this general rule to conclude a party designated as an additional insured in a liability policy is a third-party beneficiary. *Binasco v. Break–Away Demolition Corp.,* 256 A.D.2d 291, 681 N.Y.S.2d 309 (N.Y.App.Div.1998); *Carvalho v. Toll Brothers and Developers,* 278 N.J.Super. 451, 651 A.2d 492 (Ct.App.Div.), *cert. granted,* 140 N.J. 326, 658 A.2d 726 (1995), *and aff'd and remanded,* 143 N.J. 565, 675 A.2d 209 (1996); *Community Bank of Homestead v. American States Insurance Company,* 524 So.2d 1154 (Fla.Dist.Ct.App.1988) (per curiam).

[¶ 18] When we apply this general rule to Barlow's promise to obtain insurance for L & T, we conclude the parties Barlow and L & T intended to name as additional insureds are third-party beneficiaries. The question here is whether they intended to designate Cordero rather than or in addition to Kennecott as an additional insured. From the record before us, we conclude the parties clearly intended Cordero as an additional insured and, therefore, recognition of Cordero as a third-party beneficiary is appropriate to effectuate the intent of L & T and Barlow, thus satisfying the first prong of § 302 of the Restatement (Second) of Contracts. We further conclude the evidence demonstrates a clear intent on the part of L & T to give Cordero the direct benefit of being named an additional insured, thereby meeting the second prong of the Restatement test.

[¶ 19] The PICOR–L & T purchase order required L & T to:

1. Adhere to all provisions of the contract between PICOR and Cordero Mining Co.

a. Furnish PICOR & Cordero with insurance certificates per Article 11 of the contract.

1. Both PICOR & Cordero to be named as an additional insured.

Article 11 of the Cordero–PICOR contract required PICOR and its subcontractors to maintain insurance naming the "Company Group" as an additional insured. The Company Group was defined in the Cordero–PICOR contract to include Cordero, Kennecott, and each of their respective subsidiaries. When the two contracts are read together, it is clear the intent was for L & T to procure insurance naming Cordero as an additional insured.

[¶ 20] Consistent with the written contracts, L & T president Loren Crain testified it was his intent that Cordero be named as an insured in compliance with the PICOR–L & T purchase order. Additionally, Barlow representative Charles Parker testified he could not specifically recall whether L & T indicated Cordero, or Kennecott, was to be named as an additional insured but thought they were one and the same and, in any event, it was his intent in obtaining the insurance coverage from USF & G to name the owner of the mine as an additional insured and to comply with the terms of L & T's contractual obligations. There simply is no question Cordero was the owner of the mine and the entity responsible for this project. Cordero contracted with PICOR to perform work on the project at Cordero's mine, and PICOR contracted in turn with L & T to perform work for Cordero. There also is no question that the terms of L & T's purchase order required L & T to procure insurance naming Cordero as an additional insured. Under these circumstances, we hold that no genuine issue of material fact existed on the question of whether Cordero was an intended third-party beneficiary to L & T's promise to procure insurance and CNA was entitled to summary judgment on that issue. In so holding, we note the following language of the federal district court for the District of Connecticut:

Although issues relating to intent are usually questions of fact for the jury, here the parties' intent to benefit the [third-party beneficiary] is clear as a matter of law. In light of the circumstances attending the making of the contract and the parties' motives, "it is hard to see how the [third-party beneficiary] could not have been an intended beneficiary of the contract."

*Detroit Institute of Arts Founders Society*, 127 F.Supp.2d at 132 n. 32 (quoting *Delacroix v. Lublin Graphics, Inc.*, 993 F.Supp. 74, 83 (D.Conn.1997)).

▪ [¶ 21] We turn next to the question of whether Cordero was an intended third-party beneficiary of the USF & G policy. Resolution of this question under the facts presented turns on whether Barlow's knowledge and intent can be imputed to USF & G. That is, since Barlow knew the intent was to name Cordero as an additional insured on L & T's policy, can that knowledge be imputed to USF & G?

▪ [¶ 22] The authority of an insurance agent to make a contract of insurance binding upon the insurer is determined by the law of agency. 8 Eric Mills Holmes, Holmes' Appleman on Insurance 2d, Law of Insurance Agents § 52.1 at 391 (1998). The underlying agency principle is that the insurer will be bound by the acts of its agent undertaken within the scope of that agency. *Id.* at 392. The courts lean toward a broad rather than a strict construction of an insurance agent's powers, an agent's written authority is to be broadly and fairly construed, and a narrow meaning is not to be given to it unless the language employed clearly indicates that such was the intention of the parties. *Id.* at 394. An "insurance agent," so far as the insurer is concerned, is a person with actual (including express or implied) authority to represent the insurer in dealing with third parties in matters relating to insurance. *Id.* at 395. In preparing and executing a policy, an insurance agent acts as the agent of the insurer. *Id.* at 397. Even where the person's functions consist merely of soliciting insurance, receiving applications, forwarding them, receiving in return the policy and delivering it, and collecting the premium, that person is an agent in the ordinary sense of that term. *Id.*

[¶ 23] On the basis of similar principles, this court held in *Wyatt v. State Farm Fire and Casualty Company*, 78 Wyo. 228, 322 P.2d 137 (1958), that the knowledge of an agent is imputed to the insurer even when such knowledge is not in fact communicated to the insurer. In *Wyatt*, the insurer denied coverage after the insured's garage was destroyed by fire, claiming the policy covered the garage only if used for domestic purposes and the insured was using it for commercial purposes. The court concluded the policy did not clearly exclude coverage for commercial purposes and imputed to the insurer the agent's knowledge at the time the policy was negotiated that the garage was being used commercially. Although *Wyatt* involved a claim for estoppel against the insurer, we find the general principle enunciated there applicable to the claim presented here.

[¶ 24] The USF & G agency agreement executed with Barlow provided in relevant part:

> 1. [USF & G] hereby grants authority to [Barlow] in the designated territory, to solicit and submit applications for insurance ...; to issue and deliver policies, ... certificates, endorsements and binders which [USF & G] may, from time to time, authorize to be issued and delivered; to collect and receipt for premiums thereon; to cancel such policies ... at the discretion of [Barlow] where cancellation is legally possible; and to retain out of premiums collected and paid over to [USF & G] commissions at the rates set forth in the Commission Schedules.

Giving this provision a broad, fair construction, we conclude Barlow's knowledge that Cordero was to be named as an intended additional insured on L & T's policy may be imputed to USF & G. Even absent the substantial authority supporting this conclusion under agency principles, we would be inclined to reach this result based upon equitable principles under the particular circumstances presented here, where it is so abundantly clear the intent was to name Cordero—the contracting party, owner of the mine, and overseer of the project—as an additional insured. As this court has previously said, "[t]here are some circumstances ... where the plaintiff could rely upon an agent's representations even as against a contrary provision in the insurance policy, based upon not only principles of agency but considerations of equitable estoppel." *Hunter v. Farmers Insurance Group*, 554 P.2d 1239, 1243 (Wyo.1976). We hold that Cordero was an intended third-party beneficiary of the USF & G insurance policy.

## B. L & T's acceptance of the policy naming Kennecott as an additional insured as defeating the third-party beneficiary and negligence claims

[¶ 25] In the complaint, CNA, as assignee of Cordero's rights, alleged Barlow knew the intent of the policy was to benefit Cordero; it was foreseeable, therefore, that Cordero would sustain injury if Barlow failed to designate it as an additional insured; and Cordero in fact sustained injury as a result of Barlow's negligent failure to designate it. The district court dismissed the negligence claim on the grounds that L & T had a duty to review the insurance policy and reject it if it did not comply with the coverage requested; L & T knew, or should have known, Cordero was not named as an additional insured; and Cordero did nothing to ensure proper insurance coverage was in place prior to allowing PICOR and L & T to begin work at the mine.

[¶ 26] In support of the district court's ruling, Barlow cites *Small v. King*, 915 P.2d 1192, 1194 (Wyo.1996), and *Feather v. State Farm Fire and Casualty*, 872 P.2d 1177, 1181–82 (Wyo.1994), for the principle that an insured has a duty under Wyoming law to read its insurance policy and reject it if it is unacceptable. Barlow claims the evidence clearly establishes L & T knew the certificate listed Kennecott and did nothing about it, thereby relieving Barlow of responsibility for any resulting injury. Barlow claims the insured's duty to read and reject applies in contract and in tort and applies to Cordero as a third-party beneficiary as well as L & T because the former should stand in no better position than the latter—i.e., if a claim by L & T would fail for its failure to read and reject, Cordero is barred as well. *McWilliams v. Wilhelm By and Through Wilhelm*,

893 P.2d 1147, 1149 (Wyo.1995) (tort and contract); *Farmers' State Bank of Worland v. Nicholson,* 36 Wyo. 221, 254 P. 134 (1927) (third-party beneficiary stands in same position as original party).

[¶ 27] Barlow is correct that Wyoming recognizes an insured's duty to read his insurance policy and reject or renegotiate if it fails to conform to the coverage requested. *Small,* 915 P.2d at 1194; *Feather,* 872 P.2d at 1181. Barlow is also correct that the duty to read applies in cases where an insured claims the insurer failed to exercise reasonable care in providing the insurance requested. *Id.* These principles are also applicable to third-party beneficiary claims.

[¶ 28] In Wyoming, a duty of reasonable care arising from a contract may extend to third-party beneficiaries of the contract in proper circumstances. *Tidwell v. HOM, Inc.,* 896 P.2d 1322, 1325 (Wyo.1995). However, third-party beneficiary claims arising out of an alleged failure to exercise ordinary care are subject to the same defenses as would be available in an action between the actual parties to the contract. John D. Calamari & Joseph M. Perillo, The Law of Contracts § 17.10 (4th ed.1998).

[¶ 29] Applying this rule to the present facts leads to the conclusion that Barlow may assert the defense against Cordero that L & T failed to read and reject the policy just as it could assert that defense against L & T. There is no dispute that L & T knew Kennecott, rather than Cordero, was designated as an additional insured and did nothing to correct it. Under these circumstances, USF & G was entitled to summary judgment on the third-party beneficiary claim.

[¶ 30] The same analysis applies to CNA's negligence claim against Barlow. The duty to mitigate unquestionably applies in tort just as it applies in contract. *McWilliams,* 893 P.2d 1147. Although the question of whether a party injured due to the negligence of another is generally a question of fact, summary judgment is appropriate where reasonable minds could not differ that the plaintiff had ample right and opportunity to avoid the loss and yet took no action. *Garnett,* 2001 WY 94, ¶ 6, 33 P.3d 114, ¶ 6; *Moore v. Continental Insurance Company,* 813 P.2d 1296, 1300–01 (Wyo.1991). Here, the evidence is undisputed that L & T knew four months before the accident that the policy named Kennecott and did nothing about it. Under these particular circumstances, summary judgment was appropriate on the negligence claim.

[¶ 31] Barlow also claims summary judgment was appropriate because, contrary to the terms of the Cordero–PICOR contract, Cordero allowed work to begin on the project without making sure PICOR and L & T had the required insurance. Citing *Moore,* Barlow contends any damages sustained by Cordero could not be charged against Barlow because Cordero could have avoided them by ensuring the proper insurance coverage was in place before work began. In *Moore,* after repeatedly receiving late premium payments from the insured, the insurer cancelled the homeowner's policy and refunded the last payment. Upon receipt of the refund, the insured contacted the local agent and was told the policy had been cancelled. Beyond asking the local agent to see if another company would pick up the insurance, the insured did nothing to obtain replacement coverage until after his home was seriously damaged by fire. We affirmed summary judgment for the insurer based upon the insured's failure to act to mitigate his damages. We said:

> A party may, in certain instances, be required to mitigate his damages, and whether an injured party has exercised reasonable diligence and care in mitigating damages is for the trier of fact to decide. [However,] where reasonable minds could not differ with respect to efforts to mitigate, as here, summary judgment is appropriate.

*Moore,* 813 P.2d at 1300–01 (citation omitted). In reaching this result in *Moore,* we quoted Restatement (Second) of Contracts § 350 (1981):

> "(1) Except as stated in Subsection (2), damages are not recoverable for loss that

the injured party could have avoided without undue risk, burden or humiliation.

"(2) The injured party is not precluded from recovery by the rule stated in Subsection (1) to the extent that he has made reasonable but unsuccessful efforts to avoid loss."

813 P.2d at 1301. Explaining § 350, we said:

The rationale of this principle, which differentiates it from mitigation in a more general sense, is that damages which the plaintiff might have avoided with reasonable effort and without undue risk, expense, or humiliation are either not caused by the defendant's wrong or need not have been, and, therefore, are not to be charged against him. 11 Williston on Contracts § 1353 (3rd ed.1968); 5 Corbin on Contracts § 1039 (1964).

*Id.*

[¶ 32] Application of these principles in the present case provides further support for summary judgment. USF & G issued the certificate naming Kennecott as an additional insured on March 21, 1997, approximately four months before Mr. DeGaugh was injured. Although Cordero's contract with PICOR required all insurance coverage to be in place before work on the project began, Cordero did not inspect the certificate or make any inquiry whatsoever to ensure the required insurance coverage was in place. Had Cordero requested proof of the required insurance, as was its right under the PICOR contract, before allowing work to begin or at any time in the four months between issuance of the certificate and the accident, it seems likely a corrected certificate could have been issued. Here, however, Cordero took no action to avoid the loss for which recovery is sought from USF & G. The damages CNA now seeks to recover, as assignee of Cordero's rights, could have been avoided with reasonable effort and without undue risk, expense, or humiliation. Any such damages, therefore, either were not or need not have been caused by the acts of USF & G or Barlow and cannot be charged against them.

## CONCLUSION

[¶ 33] Cordero was an intended third-party beneficiary of Barlow's promise to procure insurance for L & T. However, the undisputed evidence that L & T accepted the certificate as written and Cordero failed to take any reasonable action to avoid the loss for which recovery is sought defeats both the third-party beneficiary and the negligence claims.

[¶ 34] Affirmed.