KAUTZ, Justice.
[¶1] Appellant Susan W. Sullivan and her late-husband Pike Sullivan established and funded the Pike and Susan Sullivan Foundation, *308 a Wyoming nonprofit corporation (the Foundation). The Sullivans and their friend and attorney, George Harris, served as directors of the Foundation until Mr. Sullivan passed away in 2013, at which time his position on the board was filled by Mr. Harris's wife. Conflicts over management of the Foundation developed between Mrs. Sullivan and the Harrises, and Mrs. Sullivan filed suit. She requested that the district court enter a declaratory judgment to, among other things, void Mrs. Harris's election to the board because Mr. Harris had a conflict of interest when he voted to elect her. Mrs. Sullivan also sought judicial dissolution of the Foundation on the grounds that after Mrs. Harris's election to the board was invalidated, management of the Foundation would be deadlocked.
[¶2] The district court granted summary judgment in favor of the Foundation on Mrs. Sullivan's declaratory judgment claim. It determined that Mrs. Sullivan's claim seeking to remove Mrs. Harris from the board was derivative in nature, and Mrs. Sullivan did not comply with the statutory and procedural requirements for derivative claims. It also granted summary judgment in the Foundation's favor on her judicial dissolution claim because, with three directors, there was no deadlock in management of the Foundation.
[¶3] We affirm.
ISSUES
[¶4] The parties present several issues on appeal, but the following issues are dispositive:
1. Did the district court err by concluding that Mrs. Sullivan cannot sustain a claim for judicial dissolution of the Foundation based upon board deadlock?
2. Did the district court abuse its discretion when it denied Mrs. Sullivan's request for a continuance of the summary judgment proceeding until discovery was complete?
FACTS
[¶5] In 2012, at Mr. and Mrs. Sullivan's request, Mr. Harris incorporated the Foundation as a Wyoming public benefit non-profit corporation. The Foundation applied for and received tax exempt status under 26 U.S.C. § 501(c)(3), and the Sullivans contributed significant assets to it. The Foundation explained its non-profit purpose in its tax filings as follows: "The Foundation's primary purpose is to improve education in America in K through 12 education for children, as well as Quality of Life education for elderly citizens who no longer have full time employment." It committed to giving funds to organizations that aligned with its stated purpose. The Foundation also adopted a conflict of interest policy.
[¶6] The Foundation has no members and is governed by a board of directors. Mr. and Mrs. Sullivan and Mr. Harris were the initial directors. Mr. Sullivan passed away in May 2013, leaving a vacancy on the board of directors. On September 30, 2013, acting through a written consent in lieu of the annual meeting, Mr. Harris and Mrs. Sullivan elected Mrs. Harris as the third director. In the same written consent, the directors resolved that Mr. Harris would act as "Chairman and CEO" of the Foundation, earning an annual salary of $150,000. Mr. Harris did not disclose a conflict of interest with regard to either the appointment of his wife to the board or his compensation.
[¶7] The directors continued to act through written consent in September of 2014 and September of 2015. Each time, they agreed that Mr. Harris would act as Chairman and CEO of the Foundation and receive a salary for doing so. Neither Mr. Harris nor Mrs. Harris abstained from the actions approving Mr. Harris's salary or disclosed a conflict of interest. The written consents also "ratified and confirmed" Mr. Harris's actions as Chairman and CEO during the year, including entering into agreements to contribute Foundation funds to various endeavors.
[¶8] On October 1, 2015, Mrs. Sullivan and Mrs. Harris signed a written consent in lieu of meeting which addressed the reasonableness of Mr. Harris's compensation. For the first time, Mr. Harris disclosed he was "interested in the transaction" and he did not deliberate or vote on the action. The written consent stated that "the [b]oard believes it is *309 reasonable to pay Mr. Harris reasonable total compensation for each calendar year in the amount of $150,000."
[¶9] Disagreement over management of the Foundation and how Foundation funds were being used developed between Mrs. Sullivan and Mr. Harris. On May 8, 2016, Mrs. Sullivan received verbal notice that the annual meeting of the board was scheduled for May 10, 2016. The minutes from the meeting indicate that Mrs. Sullivan was "not available" to attend the meeting, but a quorum, made up of Mr. and Mrs. Harris, was present. The meeting minutes state that Mr. and Mrs. Harris voted to amend the bylaws to increase the number of directors to four and elected Laura Lo Bianco as the fourth director. Mr. Harris was "authorized to continue to make grants as he deems appropriate to serve [the] mission of [the] Foundation."
[¶10] On September 7, 2016, Mrs. Sullivan filed suit against: the Foundation; Mr. Harris, individually and as a board director; Mrs. Harris, individually and as a board director; and Ms. Lo Bianco, individually and as a board director. In her first cause of action, Mrs. Sullivan requested a judgment declaring the election of Mrs. Harris as a director and approval of Mr. Harris's salary void because the Harrises did not follow the applicable conflict of interest procedures with regard to either of those actions. She also sought a declaration that the amendment to the bylaws which increased the number of directors to four was invalid because she had not been given timely notice of the proposed amendment in accordance with the Foundation bylaws. According to the complaint, if the amendment which enlarged the size of the board to four directors was declared invalid, Ms. Lo Bianco's election would also be invalid.
[¶11] Mrs. Sullivan's second cause of action sought judicial dissolution of the Foundation. She claimed the Foundation should be dissolved pursuant to Wyo. Stat. Ann. § 17-19-1430(a)(ii)(A) (LexisNexis 2017) because the board was deadlocked in management of the Foundation. Specifically, Mrs. Sullivan asserted that, after Mrs. Harris's and Ms. Lo Bianco's elections were voided, she and Mr. Harris would be the only remaining directors. She claimed to have "fundamental disagreements" with Mr. Harris making them "hopelessly deadlocked in the management of the Foundation's corporate affairs, including election of a third director to break the current deadlock."[1]
[¶12] Ms. Lo Bianco resigned from the board of directors, and Mrs. Sullivan amended her complaint to reflect the resignation. Mr. and Mrs. Harris moved to dismiss the individual claims against them, and the district court granted their motions.[2]
[¶13] The Foundation filed a motion to dismiss the complaint under W.R.C.P. 12(b)(6). The district court notified the parties that it was converting the Foundation's motion to dismiss to a motion for summary judgment under W.R.C.P. 56 because it planned to consider materials outside the pleadings, including affidavits, in rendering its decision. Mrs. Sullivan filed a motion pursuant to W.R.C.P. 56(f) (2016, repealed March 1, 2017), requesting that the district court either continue the summary judgment proceeding or deny the Foundation's converted motion for summary judgment to allow time for discovery.
[¶14] On April 5, 2017, the district court entered summary judgment in favor of the Foundation and denied Mrs. Sullivan's Rule 56(f) motion. The district court ruled: 1) Mrs. Sullivan's declaratory judgment claims are derivative in nature and she failed to comply with the statutory and procedural requirements for derivative claims; 2) Mrs. Harris's election to the board of directors was not a "conflict of interest transaction" under Wyoming statute or the Foundation's policy; 3) Mrs. Sullivan could not maintain her action for judicial dissolution because there was no showing of board deadlock; and 4) additional *310 discovery was unnecessary. Mrs. Sullivan filed a timely notice of appeal.
DISCUSSION
1. Judicial Dissolution
[¶15] Mrs. Sullivan asserts the district court erred by granting summary judgment in favor of the Foundation on her claim for judicial dissolution. This Court applies the de novo standard to review a district court's order granting summary judgment. Bear Peak Res., LLC v. Peak Powder River Res., LLC, 2017 WY 124, ¶ 10, 403 P.3d 1033, 1040 (Wyo. 2017).
[W]e review a summary judgment in the same light as the district court, using the same materials and following the same standards. Snyder v. Lovercheck , 992 P.2d 1079, 1083 (Wyo. 1999) ; 40 North Corp. v. Morrell , 964 P.2d 423, 426 (Wyo. 1998). We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. Id . A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. Id . If the moving party presents supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden is shifted to the non-moving party to present appropriate supporting materials posing a genuine issue of material fact for trial. Roberts v. Klinkosh , 986 P.2d 153, 155 (Wyo. 1999) ; Downen v. Sinclair Oil Corp ., 887 P.2d 515, 519 (Wyo. 1994).
Rogers v. Wright , 2016 WY 10, ¶ 7, 366 P.3d 1264, 1269 (Wyo. 2016) (quoting Inman v. Boykin , 2014 WY 94, ¶ 20, 330 P.3d 275, 281 (Wyo. 2014) ). See also , Bear Peak, ¶ 10, 403 P.3d at 1040.
[¶16] Mrs. Sullivan sought judicial dissolution of the Foundation under § 17-19-1430(a)(ii)(A), claiming the board is deadlocked. That statutory provision states in relevant part:
(a) The district court may dissolve a corporation:
....
(ii) ... in a proceeding ... by a director ... if it is established that:
(A) The directors are deadlocked in the management of the corporate affairs, and the members, if any, are unable to break the deadlock[.]
"[D]eadlock statutes operate in the public interest to terminate via the dissolution process a stalemate that has paralyzed the functioning of the corporation." 16A Fletcher Cyc. Corp. § 8066.10 (2017).
[¶17] Mrs. Sullivan asserts management of the corporation is deadlocked because there are only two proper directors on the board-she and Mr. Harris-and she fundamentally disagrees with how Mr. Harris is managing the Foundation. The premise underlying Mrs. Sullivan's claim is that Mrs. Harris's election to the board is voidable because Mr. Harris had a conflict of interest when he voted to elect her and he failed to follow the procedures for conflicts of interest required by Wyoming statute and the Foundation's policy.
[¶18] Wyo. Stat. Ann. § 17-19-831 (LexisNexis 2017) addresses director conflicts of interest. It provides in relevant part:
(a) A conflict of interest transaction is a transaction with the corporation in which a director of the corporation has a direct or indirect interest. A conflict of interest transaction is not voidable if the transaction was fair at the time it was entered into or is approved as provided in subsection (b) or (c) of this section.
(b) A transaction in which a director of a public benefit or religious corporation has a conflict of interest may be approved:
(i) In advance by the vote of the board of directors or a committee of the board if:
(A) The material facts of the transaction and the director's interest are disclosed or known to the board or committee of the board; and
(B) The directors approving the transaction in good faith reasonably believe that the transaction is fair to the corporation; or *311 (ii) Before or after it is consummated by obtaining approval of the:
(A) Attorney general; or
(B) District court in an action in which the attorney general is joined as a party.
....
(e) For purposes of subsections (b) and (c) of this section a conflict of interest transaction is authorized, approved or ratified, if it receives the affirmative vote of a majority of the directors on the board or on the committee, who have no direct or indirect interest in the transaction, but a transaction shall not be authorized, approved or ratified under this section by a single director. If a majority of the directors on the board who have no direct or indirect interest in the transaction vote to authorize, approve or ratify the transaction, a quorum is present for the purpose of taking action under this section. The presence of, or a vote cast by, a director with a direct or indirect interest in the transaction does not affect the validity of any action taken under paragraph (b)(i) or (c)(i) of this section if the transaction is otherwise approved as provided in subsection (b) or (c) of this section.
....
(g) The articles, bylaws or a resolution of the board may impose additional requirements on conflict of interest transactions.
Section 17-19-831. The Foundation also has a conflict of interest policy that requires disclosure by a director if he had a financial interest in a "transaction or arrangement" with the Foundation. The policy sets forth a procedure for addressing transactions or arrangements involving conflicts of interest.
[¶19] Mrs. Sullivan challenged Mrs. Harris's election to the board and the board's approval of Mr. Harris's salary in her declaratory judgment action. The district court determined that Mrs. Sullivan's claims were derivative in nature and she did not comply with the statutory and procedural requirements for bringing a derivative claim. Wyo. Stat. Ann. § 17-19-630 (LexisNexis 2017) states:
(a) A proceeding may be brought in the right of a domestic or foreign corporation to procure a judgment in its favor by:
....
(ii) Any director.
(b) In any proceeding under this section, each complainant shall be a member or director at the time of bringing the proceeding.
(c) A complaint in a proceeding brought in the right of a corporation shall be verified and allege with particularity the demand made, if any, to obtain action by the directors and either why the complainants could not obtain the action or why they did not make the demand. If a demand for action was made and the corporation's investigation of the demand is in progress when the proceeding is filed, the court may stay the suit until the investigation is completed.
....
(f) The complainants shall notify the secretary of state within ten (10) days after commencing any proceeding under this section if the proceeding involves a public benefit corporation or assets held in charitable trust by a mutual benefit corporation. The secretary of state shall then notify the attorney general.
See also , W.R.C.P. 23.1 (setting out procedures for derivative actions brought by "shareholders or members"). The district court also ruled that the election of Mrs. Harris to the board was not a "transaction" to which the conflict of interest rules applied.
[¶20] Mrs. Sullivan does not directly challenge the district court's determinations that her declaratory judgment claims are derivative in nature or that she did not comply with the requirements for bringing such claims. Instead, she argues that she is entitled to have the validity of Mrs. Harris's election declared within her judicial dissolution action without going through the derivative claims process.[3] Citing *312 Best v. Best, 2015 WY 133, ¶ 18, 357 P.3d 1149, 1153 (Wyo. 2015) and the Declaratory Judgment Act, Mrs. Sullivan insists that a court can declare rights within the scope of its jurisdiction to judicially dissolve a corporation. The authorities mentioned by Mrs. Sullivan simply recite the general rule that the Declaratory Judgment Act does not extend a court's jurisdiction but, instead, provides courts who already have jurisdiction over a matter authority to grant declaratory relief. Id. There is no question that Wyoming district courts have jurisdiction to decide derivative actions and to judicially dissolve nonprofit corporations, and, under the Declaratory Judgment Act, declaratory relief would be available in such actions. However, to maintain either a derivative claim or an action for judicial dissolution, the plaintiff must meet the statutory requirements for those types of cases.
[¶21] Mrs. Sullivan seeks judicial dissolution of the Foundation based upon deadlock, but she cannot demonstrate that the board is deadlocked without first establishing that Mrs. Harris's election to the board was improper. That requires a showing that Mr. Harris failed to comply with the statutory and/or the Foundation policy requirements for conflict of interest transactions. The question, then, is whether Mrs. Harris's election must be challenged in a derivative action, or if that issue can be resolved within a judicial dissolution action.
[¶22] In a derivative action, an individual shareholder, director or member asserts a cause of action on behalf of the corporation. See § 17-19-630 ; GOB, ¶ 13, 197 P.3d at 1272 ; Wallop Canyon Ranch, LLC v. Goodwyn, 2015 WY 81, ¶ 28, 351 P.3d 943, 951 (Wyo. 2015). Recovery in a derivative action "inures to the corporation" rather than shareholders or directors, as individuals. See Wallop Canyon Ranch, ¶ 28, 351 P.3d at 951. Thus, when the director (or shareholder or member) seeks to remedy an injury to the corporation rather than himself, the action is derivative in nature.
[¶23] In Wallop Canyon Ranch, ¶ 28, 351 P.3d at 951, we discussed the differences between derivative and direct actions:
Whenever a cause of action exists primarily in behalf of the corporation against directors, officers, and others, for wrongfully dealing with corporate property, or wrongful exercise of corporate franchises, so that the remedy should be legally obtained through a suit by and in the name of the corporation, and the corporation either actually or virtually refuses to institute or prosecute such a suit, then, in order to prevent a failure of justice, an action may be brought and maintained by a stockholder or stockholders, either individually or suing on behalf of themselves and all others similarly situated, against the wrongdoing directors, officers, and other persons. * * * The stockholder does not bring such a suit because [h]is rights have been [d]irectly violated or because the cause of action is [h]is or because [h]e is entitled to the relief sought; he is permitted to sue in this manner simply in order to set in motion the judicial machinery of the court. The stockholder, either individually or as the representative of the class, may commence the suit, and may prosecute it to judgment; but in every other respect the action is the ordinary one brought by the corporation, it is maintained directly for the benefit of the corporation, and the final relief, when obtained, belongs to the corporation, and not to the stockholder-plaintiff.
Centrella v. Morris, 597 P.2d 958, 962 (Wyo. 1979) (internal quotation marks and citations omitted) (quoting Smith v. Stone, 21 Wyo. 62, 128 P. 612, 620-621 (Wyo. 1912) ).
[¶24] The Foundation's conflict of interest policy states that its "purpose" is "to protect this tax-exempt organization's interest when it is contemplating entering into a transaction or arrangement that might benefit the private interest of an officer or director of [the Foundation] or might result in *313 a possible excess benefit transaction." In Mueller v. Zimmer, 2005 WY 156, ¶ 30, 124 P.3d 340, 357 (Wyo. 2005), we stated that the purpose of the nonprofit corporation conflict of interest statute, § 17-19-831, is to "protect the corporation from potential unfair dealing by providing for review of conflict of interest transactions by disinterested board or committee members." The Foundation's policy and our precedent interpreting § 17-19-831 confirm that a challenge to the board's action on the basis that it involved an improper conflict of interest belongs to the corporation, not to an individual director. Given it is the corporation that is harmed when the board takes an action which involves an improper conflict of interest, a director's request to have board action voided on that basis is derivative in nature.
[¶25] Mrs. Sullivan claims that Workman v. Verde Wellness Center, Inc., 240 Ariz. 597,382 P.3d 812 (Ariz. Ct. App. 2016) supports her position that her action for judicial dissolution of the corporation does not have to be brought as a derivative action. Melinda Workman was a director on the board of the Verde Wellness Center, an Arizona nonprofit corporation. She filed suit for judicial dissolution of the corporation, claiming the board was acting in a manner that was "illegal, oppressive or fraudulent and corporate assets were being wasted, misapplied or diverted for non-corporate purposes."[4] Id. at 815. The issue in that case was whether Ms. Workman retained standing to maintain her action for judicial dissolution after the board voted to remove her as a director. In concluding that she did, the Arizona court remarked that the judicial dissolution statute "shows the legislature's intent to grant individual directors standing to petition for judicial dissolution by virtue of their status as a director." Id. at 818. The court did not indicate that Ms. Workman's claim for judicial dissolution had to be brought as a derivative action. Id. See also , Notz v. Everett Smith Group, Ltd., 316 Wis.2d 640, 764 N.W.2d 904 (2009) (distinguishing between derivative and direct claims and stating that a claim for judicial dissolution based upon oppressive conduct was not derivative).
[¶26] We have no quarrel with Workman and agree with Mrs. Sullivan that an action for judicial dissolution may be maintained by a director as a direct claim. However, there is an important caveat to that rule-the director must satisfy the statutory requirements for the judicial dissolution claim. In Workman, there was no indication that an underlying derivative issue needed to be litigated before the judicial dissolution could be considered. Instead, Ms. Workman pleaded the elements of a claim for judicial dissolution, i.e., that the board was acting in an illegal, oppressive or fraudulent manner and corporate assets were being wasted, misapplied or diverted for non-corporate purposes.
[¶27] Section 17-19-1430(a)(ii)(A) requires that the directors be deadlocked in the management of the corporation before a direct claim for judicial dissolution can be maintained. Had Mrs. Sullivan been able to show a deadlock on the board of directors, she would have been able to sustain her direct cause of action for judicial dissolution. However, she cannot show there is a deadlock while there are still three directors on the board. To allow a claim for judicial dissolution based upon voting deadlock when no such deadlock exists would undermine the very purpose of § 17-19-1430(a)(ii)(A), which is to protect the public interest by terminating through the dissolution process a stalemate that has paralyzed the functioning of the corporation. See 16A Fletcher Cyc. Corp., § 8066.10. As long as there are three directors, there is no stalemate paralyzing the function of the Foundation.
[¶28] Mrs. Sullivan needed to follow a two-step process to obtain judicial dissolution of the corporation based upon deadlock. She had to have Mrs. Harris's election voided and then establish that the remaining directors-she and Mr. Harris-were deadlocked. The way to have the election voided was to bring *314 a derivative action on behalf of the corporation under the conflict of interest statute and/or policy. Mrs. Sullivan does not even suggest that she complied with the procedural and statutory requirements for a derivative action. Given she did not properly bring an action to have Mrs. Harris's election voided, there are still three directors on the board and, as a matter of law, she cannot establish a deadlock in the management of the Foundation. The district court properly granted summary judgment in favor of the Foundation.[5]
2. Discovery
[¶29] Mrs. Sullivan filed a motion under Rule 56(f) (2016, repealed March 1, 2017) asking the district court to continue the summary judgment proceedings or deny the summary judgment motion to allow time for discovery. While her motion was pending, this Court revised the Wyoming Rules of Civil Procedure. Rule 56(f) was repealed and replaced with a similar provision codified as W.R.C.P. 56(d) (2017). For our purposes, the two rules are substantively the same, so we will apply the current version. See W.R.C.P. 86 (2017) (providing that the revised rules govern proceedings after their effective date "in an action then pending unless[ ] the Supreme Court specifies otherwise[ ]or the [presiding] court determines that applying them in a particular action would be infeasible or work an injustice").
[¶30] Rule 56(d) states:
(d) When Facts are Unavailable to the Nonmovant .-If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
(1) defer considering the [summary judgment] motion or deny it;
(2) allow time to obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order.
[¶31] The district court denied Mrs. Sullivan's request, ruling that discovery was unnecessary to the issues presented in the Foundation's motion for summary judgment. The district court has discretion in determining whether to grant a motion requesting additional time for discovery. Jacobson v. Cobbs, 2007 WY 99, ¶ 10, 160 P.3d 654, 657 (Wyo. 2007). We do not interfere with its denial of the request unless the district court abused its discretion. Id.
To find an abuse of discretion, the refusal must be so arbitrary as to deny appellant due process, and the burden rests upon appellant to prove actual prejudice and a violation of his rights. Upon review we look at the peculiar circumstances of the case and the reasons presented to the trial judge at the time of the request.
Abraham v. Great Western Energy, LLC, 2004 WY 145, ¶ 16, 101 P.3d 446, 454 (Wyo. 2004) (citing Byrd v. Mahaffey, 2003 WY 137, ¶ 7, 78 P.3d 671, [673] (Wyo. 2003) ).
[¶32] Mrs. Sullivan claims the district court abused its discretion by denying her motion because "[t]he absence of discovery made it impossible for [her] counsel to determine several material questions of fact, including the circumstances of M[r]s. Harris's election to the [b]oard and whether such election" constituted a transaction for application of the conflict of interest rules. As observed by the district court, those issues of fact, if they exist, have no bearing on whether Mrs. Sullivan properly pleaded her claims to have Mrs. Harris's election to the board voided and the Foundation judicially dissolved. The district court had before it all the information necessary to determine the Foundation's summary judgment motion and discovery would not have had any impact on the parties' briefing or the district court's decision. The district court did not abuse its discretion when it denied Mrs. Sullivan's motion.
[¶33] Affirmed.

Mrs. Sullivan's complaint also included a request for a preliminary injunction, but she does not raise any issues on appeal regarding the district court's resolution of that claim.

Mrs. Sullivan does not contest the district court's dismissal of the claims against Mr. and Mrs. Harris.

Mrs. Sullivan labels her issue as one of standing and that was the terminology used by the district court in its decision. We do not find it necessary to discuss the issue in the context of standing. Like in GOB, LLC v. Rainbow Canyon, Inc., 2008 WY 157, 197 P.3d 1269 (Wyo. 2008), we will address the matter before us by simply determining whether Mrs. Sullivan has met the statutory requirements for her claims.

The Arizona and Wyoming statutes are very similar. Both states allow judicial dissolution if the directors are deadlocked, the directors are acting in an illegal, oppressive or fraudulent manner, or corporate assets are being misapplied or wasted. Compare § 17-19-1430 and A.R.S. § 10-11430.

The district court also concluded that the election of Mrs. Harris to the board was not a "conflict of interest transaction" governed by Wyoming statute or the Foundation's policy. That ruling was unnecessary because the court's conclusion that Mrs. Sullivan did not bring a proper derivative action to challenge the board's action was dispositive. Consequently, we offer no opinion as to the correctness of its ruling that Mrs. Harris's election to the Board was not a "transaction" under the conflict of interest provisions.