# IN THE SUPREME COURT, STATE OF WYOMING

# 2024 WY 128

**OCTOBER TERM, A.D. 2024**

**November 27, 2024**

CHARLES LEONHARDT,

Appellant
(Plaintiff),

v.

BIG HORN COUNTY SHERIFF'S
OFFICE; BIG HORN COUNTY JAIL;
SHERIFF KEN BLACKBURN; and
CAPTAIN DEBBIE COOK,

Appellees
(Defendants).

S-24-0049

*Appeal from the District Court of Big Horn County*
*The Honorable Bill Simpson, Judge*

*Representing Appellant:*
    M. Jalie Meinecke, Meinecke & Sitz, LLC, Cody, Wyoming. Argument by Ms. Meinecke.

*Representing Big Horn County:*
    John D. Bowers, Bowers Law Firm, PC, Afton, Wyoming. Argument by Mr. Bowers.

*Representing Sheriff Ken Blackburn and Captain Debbie Cook:*
    Bridget Hill, Wyoming Attorney General; Mark A. Klaassen, Deputy Attorney General; Debra Hulett, Senior Assistant Attorney General. Argument by Ms. Hulett.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    Charles Leonhardt suffered from back pain while he was a pretrial detainee at the Big Horn County Jail (Jail).  He was eventually transported to a hospital where he was diagnosed with two lower back infections which caused him long-term complications.  Mr. Leonhardt sued Big Horn County Sheriff Ken Blackburn, Jail Captain Debbie Cook, unnamed detention officers, the Big Horn County Sheriff's Office, and the Jail, alleging negligence and deliberate indifference under the Fourteenth Amendment.  The district court granted summary judgment to the defendants on both claims.  We affirm.

## *ISSUES*

[¶2]    Mr. Leonhardt raises two issues which we restate as:

1.   Did the district court err by granting summary judgment in favor of Sheriff Blackburn, Captain Cook, and the detention officers on Mr. Leonhardt's negligence claim?

2.   Did the district court err by granting summary judgment in favor of Sheriff Blackburn, Captain Cook, the detention officers, the Big Horn County Sheriff's Office, and the Jail on Mr. Leonhardt's Fourteenth Amendment deliberate indifference claim?

## *FACTS*

[¶3]    On February 7, 2018, Mr. Leonhardt was arrested for violating a protection order and booked into the Jail.  Mr. Leonhardt told the booking officer he took seizure medication but denied he had any "problems with [his] bones and/or joints [including his] back[.]"  He was placed in a cell in the medical unit adjacent to the nurse's station.  His cell was equipped with an intercom button which he could push to speak with the Jail's housing unit.

[¶4]    At the time of Mr. Leonhardt's booking, Ken Blackburn was the County Sheriff and Debbie Cook was the Jail's Captain.  Midway Medical Clinic (Midway) provided medical services to inmates at the Jail pursuant to a contract between Big Horn County and the South Big Horn County Hospital District (Hospital District).  Dr. Andrew Roberts, a Midway physician, saw inmates at the Jail one day per week and was otherwise on call.  Christine Wickelman and Destry Stevens, nurses from Midway, were assigned to the Jail and saw inmates during the week from 8 a.m. to 2:00 or 3:00 p.m.  To request medical care, an inmate could submit a Medical Request Form to a detention officer, who would provide it to a nurse.  The nurse would determine any appropriate treatment and respond in writing or meet with the inmate.  An inmate could also voice any medical concerns directly to a

1

detention officer. If the inmate suffered an emergency, the detention officer would call for an ambulance. Mr. Leonhardt was aware of the procedures to request medical care at the Jail.

[¶5]   On February 12, 2018, Mr. Leonhardt submitted a Medical Request Form seeking to take his seizure medication four times per day rather than twice a day. Nurse Wickelman responded to the request that day in writing. She directed him to continue his current dosing for two weeks. Two days later, after Mr. Leonhardt learned he would be charged with a felony, Dr. Roberts saw Mr. Leonhardt for anxiety, depression, and tearfulness.

[¶6]   On February 17, Mr. Leonhardt bent over to grab a plastic bin containing his personal items. He felt a sharp pain in his back, which he believed was his sciatic nerve. He did not ask for medical care. Two days later, on February 19, Mr. Leonhardt pushed the intercom button in his cell because he was in pain and wanted to speak with Captain Cook. He was told to submit a Medical Request Form, which he did. The form did not seek medical care but rather requested a legal book and a bag of M&Ms. At 2 a.m. on February 20, he spoke with Captain Cook for several hours about his emotional needs; he told her his back hurt. During this conversation, she told him "they would take real good care of [him]."

[¶7]   On February 21, Mr. Leonhardt had a severe headache and back pain. He crawled across the cell floor, cried for help, and kicked on the door to get someone's attention in the nurse's station. He saw Nurse Stevens in the nurse's station listening to a book on tape. When Mr. Leonhardt tried to get Nurse Stevens' attention, Nurse Stevens turned up the volume on the book on tape and closed the shades on a door. When Mr. Leonhardt continued to call for assistance, Nurse Stevens again increased the volume on the book on tape. After 8-12 minutes, Mr. Leonhardt quit crying for help and kicking the door because he realized no one was going to assist him. He then pushed the intercom button in his cell to get the attention of a detention officer, but no one responded.

[¶8]   The next morning, on February 22, Mr. Leonhardt pressed the intercom button in his cell and spoke with Captain Cook about his headache and back pain. He also told her he believed he was constipated. On February 23, Sheriff Blackburn visited Mr. Leonhardt. Mr. Leonhardt asked him "to please find [him] some help" for his back. That same day, Nurse Stevens saw Mr. Leonhardt for back spasms and started him on a Medrol Dose Pack (steroids) to treat his pain. On February 24, Nurse Wickelman and a detention officer gave Mr. Leonhardt a walker to help with ambulation.

[¶9]   On February 25 and February 27, Mr. Leonhardt pushed the intercom button in his cell to speak with Captain Cook about his back pain, but he was not allowed to speak with her. On February 28, Mr. Leonhardt submitted a Medical Request Form stating he was having trouble sleeping and requesting a sleep aid. He also asked for Q-tips to clean his ears and stated he was constipated. Nurse Wickelman gave a written response directing

him to use a stool softener and informing him she could see him that afternoon. That same day, Nurse Wickelman saw Mr. Leonhardt for back spasms and constipation. Mr. Leonhardt could not walk or sit up for very long and was in pain. Mr. Leonhardt told Nurse Wickelman he thought the steroids might have helped his back "some" and he had a good bowel movement, which may have been part of the problem. Nurse Wickelman discontinued the steroids and prescribed an anti-spasmodic/muscle relaxer. On March 3, Mr. Leonhardt submitted another Medical Request Form complaining of constipation.

[¶10] The next day, on March 4, a detention officer went to Mr. Leonhardt's cell to ensure he received his lunch. Mr. Leonhardt told the officer he needed help sitting up to eat. While sitting him up, the officer noted Mr. Leonhardt's back was "very hot." Mr. Leonhardt was "kind of slurring his words" and his eyes were "fluttering a little bit." The officer took Mr. Leonhardt's temperature, which was very high. The officer called for an ambulance. Mr. Leonhardt was taken to the South Big Horn County Hospital (the Hospital) and from there he was transported to St. Vincent's Healthcare in Montana. At St. Vincent's Healthcare, he was diagnosed with two separate infections in his lumbar spine—a retroperitoneal abscess anterior to his L5 vertebra and discitis osteomyelitis at L4-L5. Mr. Leonhardt underwent multiple surgeries to remove the infections and remained in the hospital for over a month. He suffered permanent complications from the infections, including a reduction in his kidney function.

[¶11] Mr. Leonhardt sued Sheriff Blackburn, Captain Cook, unnamed detention officers, the Big Horn County Sheriff's Office (the Sheriff's Office), the Jail, the Hospital District, the Hospital, Midway, Dr. Roberts, Nurse Wickelman, Nurse Stevens, and unnamed employees of the medical entities over the alleged inadequate medical care he received while detained at the Jail. He asserted four claims: (1) negligence under the Wyoming Governmental Claims Act (WGCA) against Sheriff Blackburn, Captain Cook, and the unnamed detention officers;[1] (2) negligence under the WGCA against the Hospital District, the Hospital, Midway, Dr. Roberts, Nurse Wickelman, Nurse Stevens, and the unnamed employees of the medical entities (collectively Medical Providers); (3) deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment under 42 U.S.C. § 1983 against the Medical Providers; and (4) deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment under 42 U.S.C. § 1983 against Sheriff Blackburn (in his individual and official capacities), Captain Cook (in her individual and official capacities), the unnamed detention officers, the Sheriff's Office, and the Jail.

---

[1] The district court, the Sheriff's Office, and the Jail proceeded below as if Mr. Leonhardt had alleged his negligence claim against the Sheriff's Office and the Jail. They were mistaken, as the negligence claim was asserted against only Sheriff Blackburn, Captain Cook, and the unnamed detention officers. Mr. Leonhardt did not assert or claim in the district court that the Sheriff's Office and the Jail were vicariously liable for the alleged negligence of Sheriff Blackburn, Captain Cook, or the unnamed detention officers, nor did he allege a claim for negligent training and supervision against them.

[¶12] The Medical Providers moved for partial summary judgment on the negligence claim, apparently on statute of limitations grounds.[2] The district court granted that motion. The Medical Providers later moved for summary judgment on the Fourteenth Amendment deliberate indifference claim. The district court granted that motion with the exception of Nurse Stevens. It determined genuine disputes of material fact existed as to whether Nurse Stevens was deliberately indifferent to Mr. Leonhardt's serious medical needs on February 21, when Mr. Leonhardt alleged Nurse Stevens ignored his cries for help when he was kicking on his cell door. Mr. Leonhardt's deliberate indifference claim against Nurse Stevens was subsequently resolved.

[¶13] Sheriff Blackburn, Captain Cook, the detention officers, the Sheriff's Office, and the Jail moved for summary judgment on the claims against them. The district court granted summary judgment to Sheriff Blackburn, Captain Cook, and the detention officers on the negligence claim. It found Sheriff Blackburn had a duty under Wyo. Stat. Ann. § 18-6-303(b) to "arrange for the administration of medical care reasonably required by prisoners committed to his custody" and he satisfied that duty by arranging for the medical providers from Midway to supply medical care to the Jail's inmates, including Mr. Leonhardt. The court also determined Sheriff Blackburn, Captain Cook, and the detention officers owed a duty to Mr. Leonhardt to act reasonably under the circumstances. It found the undisputed facts showed Sheriff Blackburn, Captain Cook, and the detention officers acted reasonably by ensuring Mr. Leonhardt received timely medical care from the Jail's medical providers for his back pain, a walker to help with ambulation, assistance with showering, and over-the-counter pain medications. The court further found that Sheriff Blackburn, Captain Cook, and the detention officers did not proximately cause Mr. Leonhardt's injuries because, as to them, it was not foreseeable that Mr. Leonhardt's back pain was caused by an infection or that he needed additional diagnostic care or imaging.

[¶14] The district court granted summary judgment to Sheriff Blackburn, Captain Cook, the detention officers, the Sheriff's Office, and the Jail on Mr. Leonhardt's Fourteenth Amendment deliberate indifference claim. It found Sheriff Blackburn, Captain Cook, and the detention officers did not act with deliberate indifference to Mr. Leonhardt's back pain. "Nothing [they] did in this case demonstrate[d] any intention to deny or delay access to medical care for Mr. Leonhardt's back pain or to deliberately ignore that pain." Rather, when they became aware of his condition, they directed his medical care to the Jail's medical providers, who provided treatment that gave him relief. Because Mr. Leonhardt had failed to show Sheriff Blackburn and Captain Cook violated his constitutional rights, the court found they were entitled to qualified immunity on Mr. Leonhardt's Fourteenth Amendment official capacity claims. With respect to the Sheriff's Office and the Jail, the district court determined Mr. Leonhardt had failed to show these entities had a custom or

---

[2] Sheriff Blackburn and Captain Cook allege in their brief that the Medical Providers' partial motion for summary judgment was based on Mr. Leonhardt's failure to timely file a claim with the Medical Review Panel. For this proposition, they cite to pages not designated as part of the appellate record.

policy of ignoring an inmate's needs for medical care or that any such policy or custom was the cause of any constitutional violation.

[¶15]  Mr. Leonhardt timely appealed.

## *STANDARD OF REVIEW*

[¶16]  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." W.R.C.P. 56(a).  "We review the district court's summary judgment order de novo."[3] *Wiese v. Riverton Mem'l Hosp., LLC*, 2022 WY 150, ¶ 30, 520 P.3d 1133, 1141–42 (Wyo. 2022) (citing *Kappes v. Rhodes*, 2022 WY 82, ¶ 14, 512 P.3d 31, 35 (Wyo. 2022)).

> [W]e review a summary judgment in the same light as the district court, using the same materials and following the same standards.  We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record.  A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties.

*Gowdy v. Cook*, 2020 WY 3, ¶ 21, 455 P.3d 1201, 1207 (Wyo. 2020) (quoting *Sullivan v. Pike & Susan Sullivan Found.*, 2018 WY 19, ¶ 15, 412 P.3d 306, 310 (Wyo. 2018)).

[¶17]  "The party moving for summary judgment bears the burden of establishing a *prima facie* case and showing there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Miller by & through Travis v. Sweetwater Cnty. Sch. Dist. #1*, 2021 WY 134, ¶¶ 13–14, 500 P.3d 242, 246 (Wyo. 2021) (italics added) (citation and quotation marks omitted).  When the movant "does not have the ultimate burden of persuasion, it establishes a *prima facie* case for summary judgment by showing a lack of evidence on an essential element of the opposing party's claim." *Gowdy*, ¶ 22, 455 P.3d at 1207. "Once the movant establishes a *prima facie* case for summary judgment, the burden shifts to the opposing party to present [admissible and competent evidence] demonstrating a genuine dispute as to a material fact for trial." *Id.* ¶ 23, 455 P.3d at 1207 (citing *Hatton v. Energy Elec. Co.*, 2006 WY 151, ¶ 9, 148 P.3d 8, 12–13 (Wyo. 2006)).

---

[3] Mr. Leonhardt mistakenly states in his brief that the standard of review is abuse of discretion.

*DISCUSSION*

[¶18]   Mr. Leonhardt claims the district court's summary judgment decision was in error because genuine disputes of material fact exist as to whether Sheriff Blackburn, Captain Cook, and the detention officers were negligent and whether Sheriff Blackburn, Captain Cook, the detention officers, the Sheriff's Office, and the Jail were deliberately indifferent to his serious medical needs.[4]   We address each argument in turn.

## I.   Did the district court err by granting summary judgment in favor of Sheriff Blackburn, Captain Cook, and the detention officers on Mr. Leonhardt's negligence claim?

[¶19]   The WGCA provides: "A governmental entity and its public employees while acting within the scope of duties are granted immunity from liability for any tort except as provided by W.S. 1-39-105 through 1-39-112."   Wyo. Stat. Ann. § 1-39-104(a) (LexisNexis 2023).   The definition of "[g]overnmental entity" includes "any local government," and the definition of "[l]ocal government" includes "counties."   Wyo. Stat. Ann. § 1-39-103(a)(i), (ii).   "As such, the WGCA generally grants immunity to [counties] and [county] employees for torts committed while acting within the scope of their duties, unless a specific exception applies." *Whitham v. Feller*, 2018 WY 43, ¶ 14, 415 P.3d 1264, 1267 (Wyo. 2018).   Section 1-39-112 establishes an exception "for damages resulting from [the] tortious conduct of peace officers while acting within the scope of their duties."   Wyo. Stat. Ann. § 1-39-112.   "Peace officer" includes sheriffs and detention officers, Wyo. Stat. Ann. §§ 1-39-103(a)(iii), 7-2-101(a)(iv)(A), (H), and "negligence is a recognized tort under § 1-39-112." *Cornella v. City of Lander*, 2022 WY 9, ¶ 24, 502 P.3d 381, 387 (Wyo. 2022) (collecting cases).   "To establish negligence, [a plaintiff] must prove: '(1) the defendant owed the plaintiff a duty to conform to a specified standard of care; (2) the defendant breached the duty of care; (3) the breach proximately caused injury to the plaintiff; and (4) the injury is compensable by money damages.'" *Id.* ¶ 25, 502 P.3d at 387 (quoting *Miller*, ¶ 15, 500 P.3d at 246–47).

[¶20]   Mr. Leonhardt argues the district court erred by granting summary judgment to Sheriff Blackburn, Captain Cook, and the detention officers on his negligence claim.   He maintains these individuals had the duty to act reasonably and to ensure he had access to medical care.   Mr. Leonhardt claims they breached those duties on February 21 when, despite knowing that he was suffering from back pain prior to that date, they failed to respond when he pushed the intercom button at least three times,[5] thereby prohibiting him from receiving the medical care he was requesting.   While he admits their breach may not

---

[4] In the district court, Mr. Leonhardt never identified the unnamed detention officers he listed as defendants. In this appeal, he did not name any detention officers as appellees.   Nevertheless, because it does not affect the result, we will address Mr. Leonhardt's claims against the unnamed detention officers.

[5] While Mr. Leonhardt testified at his deposition that he pushed the intercom button on February 21, he did not allege until this appeal that he pushed the button "at least three times."

6

have caused him to suffer the infections, he argues there are genuine issues of material fact as to whether their inactions caused him unnecessary pain and suffering, which is compensable.

[¶21]  Sheriff Blackburn, Captain Cook, and the detention officers agree they had a duty to act reasonably and do not contest Mr. Leonhardt's claim that they had a duty to ensure he had access to medical care while detained at the Jail.  As a result, we assume, without deciding, that Sheriff Blackburn, Captain Cook, and the detention officers had these duties. *See Stroup v. Oedekoven*, 995 P.2d 125, 130 (Wyo. 1999) (assuming, without deciding, that a duty exists because "[t]he question of whether a duty exists and, if so, the scope of that duty, is too important a question to be decided without briefing on the issue").  *See also Cornella*, ¶ 27, 502 P.3d at 387 ("[W]e have long held that 'peace officers acting within the scope of their duties have a common law duty to act as reasonable peace officers of ordinary prudence under like circumstances.'" (quoting *Duncan v. Town of Jackson*, 903 P.2d 548, 552 (Wyo. 1995))).  We agree with the district court, however, that Mr. Leonhardt failed to establish a genuine dispute of material fact as to whether they breached those duties by ignoring him when he pushed the intercom button on February 21 or at any time while he was detained at the Jail.

[¶22]  Mr. Leonhardt first experienced back pain on February 17.  He did not request medical care that day.  Two days later, he pushed the intercom button for assistance with back pain.  He was told to submit a Medical Request Form.  He submitted a form, but he did not request medical care; he requested a legal book and a bag of M&Ms.  Indeed, none of the Medical Request Forms he submitted while housed at the Jail concerned back pain.  On February 21, Mr. Leonhardt was lying on his cell floor in severe pain and kicking the cell door.  When Nurse Stevens ignored his pleas for help, Mr. Leonhardt pushed the intercom button in his cell.  No one responded.  However, there is no evidence that Sheriff Blackburn, Captain Cook, or any detention officer was aware he pushed the button or that he was in pain that day.  The evidence showed that when an inmate pushes the intercom button, it alerts the Jail's housing unit, not Sheriff Blackburn or Captain Cook.  Mr. Leonhardt did not identify the unnamed detention officers he was suing or claim that any of them were working in the housing unit that day and ignored him when he pushed the button. *See supra* n.4.  On February 20 and 22, Mr. Leonhardt told Captain Cook about his back pain.  On February 23, he asked Sheriff Blackburn for help with his back pain and, later that day, Nurse Stevens saw him and began him on steroids.  He was provided a walker on February 24.[6]  He was also assisted with showering.  On February 28, Mr. Leonhardt reported to Nurse Wickelman that the steroids had helped his back and he believed constipation may have been contributing to his back pain.  As the district court aptly found:

---

[6] In his brief, Mr. Leonhardt suggests Sheriff Blackburn, Captain Cook, and the detention officers were negligent by providing him a walker rather than referring him to medical care.  The facts show he was already receiving medical care for his back pain when he obtained the walker.

> The overall treatment Mr. Leonhardt received from defendants provided him with timely attention. While attention to his needs may not always have been as prompt as a free citizen might hope to receive, he was given medical care at the jail that addressed his needs. The undisputed facts do not show unreasonable behavior.

[¶23] Mr. Leonhardt does not challenge the district court's negligence decision other than its determination that Sheriff Blackburn, Captain Cook, and the detention officers were not negligent on February 21. Mr. Leonhardt argues Sheriff Blackburn, Captain Cook, and the detention officers were negligent on February 21 by ignoring him when he pushed the intercom button. Sheriff Blackburn, Captain Cook, and the detention officers cannot be deemed negligent for failing to respond to the intercom button or otherwise ignoring his need for medical care on February 21. This is because there was no evidence that they knew he pushed the intercom button, needed medical care that day, or ignored him. Rather, the undisputed facts show that the only person aware of Mr. Leonhardt's cries for help that day was possibly Nurse Stevens.

[¶24] Captain Cook testified that a nurse could not provide medical treatment to a distressed inmate without alerting a detention officer because an officer would have to lock down the pod and unlock the inmate's door. There was no evidence, however, that Nurse Stevens ever alerted Sheriff Blackburn, Captain Cook, or a detention officer of Mr. Leonhardt's need for medical care on February 21. Mr. Leonhardt did not allege Sheriff Blackburn, Captain Cook, or the detention officers were vicariously liable for Nurse Stevens' negligence or that they were otherwise negligent for failing to supervise or train Nurse Stevens. The only evidence in the record shows Nurse Stevens was employed by Midway, the Hospital, and/or the Hospital District, and neither Sheriff Blackburn nor Captain Cook supervised Nurse Stevens. *Shafer v. TNT Well Serv., Inc.*, 2012 WY 126, ¶ 10, 285 P.3d 958, 962 (Wyo. 2012) (a negligent supervision claim is based "on the employer's own negligence in failing to exercise due care to protect third parties from the foreseeable tortious acts of an employee"); *Worman v. BP Am. Prod. Co.*, 2011 WY 54, ¶ 16, 248 P.3d 644, 649 (Wyo. 2011) ("Under the *respondeat superior* theory, an employer is liable for the negligence of an employee acting within the scope of his employment." (quoting *Austin v. Kaness*, 950 P.2d 561, 563 (Wyo. 1997))).

[¶25] Mr. Leonhardt claims Sheriff Blackburn, Captain Cook, and the detention officers were negligent by failing to respond when he pushed the intercom button on February 21 because they knew or should have known that he had been suffering from back pain **prior to** that date. He claims the following facts demonstrate they were aware he was suffering from back pain **prior to** February 21: (1) they frequently gave him over-the-counter pain medication throughout his detention; (2) they assisted him in taking a shower because he was in so much pain; (3) they gave him a walker because he could not walk due to the pain;

(4) he twice requested to speak with Captain Cook about his back pain; and (5) he spoke with Captain Cook about his back pain on February 22.[7]

[¶26] These facts do not show that Sheriff Blackburn, Captain Cook, or the detention officers knew, or should have known, **prior to** February 21 that Mr. Leonhardt was suffering from back pain. Mr. Leonhardt testified he received the walker on February 24, and he had the walker when he was assisted in the shower. This occurred **after** the February 21 incident. Similarly, Mr. Leonhardt testified he spoke to Captain Cook on February 22 and requested, but was not allowed, to speak with her on February 25 and 27. The record shows detention officers dispensed over-the-counter ibuprofen to Mr. Leonhardt throughout his stay at the Jail, including once between February 17 and 21. However, nothing in the record indicates he received the ibuprofen for back pain. Instead, the record reflects Mr. Leonhardt received over-the-counter ibuprofen even before he first experienced back pain on February 17.

[¶27] Mr. Leonhardt argues summary judgment in favor of Sheriff Blackburn, Captain Cook, and the detention officers on his negligence claim cannot stand because it is "incongruen[t]" with the district court's refusal to grant summary judgment to Nurse Stevens on his Fourteenth Amendment deliberate indifference claim. He claims that in denying summary judgment to Nurse Stevens on the Fourteenth Amendment deliberate indifference claim, the district court found that even "[a] layman could recognize that Mr. Leonhardt lying on the floor in pain, kicking or hitting his cell door to get assistance, would require a doctor's attention," yet it found there was no negligence by the layman jailers for failing to recognize he needed medical care under these exact same circumstances. According to Mr. Leonhardt, "[i]f there was enough evidence to support the fact that [Nurse Stevens] PURPOSEFULLY ignored Mr. Leonhardt on February 21, 2018, then surely there is enough evidence to support the notion that the detention officers negligently ignored Mr. Leonhardt under those same circumstances." The district court's findings are not inconsistent. Mr. Leonhardt specifically testified that Nurse Stevens was aware of his pleas for help on February 21 and ignored them by turning the volume up on a book on tape and shutting the shades on a door. He did not testify or offer any evidence showing Sheriff Blackburn, Captain Cook, or the detention officers were aware of Mr. Leonhardt's pleas for help on February 21 or that they ignored them.

[¶28] Mr. Leonhardt says whether a defendant breached a duty is a question of fact for the jury. While summary judgment is disfavored in negligence actions, summary judgment will be affirmed where the record fails to show the existence of a genuine issue of material fact. *Uinta Cnty. v. Pennington*, 2012 WY 129, ¶ 11, 286 P.3d 138, 141–42 (Wyo. 2012) (citing *Gayhart v. Goody*, 2004 WY 112, ¶ 11, 98 P.3d 164, 168 (Wyo. 2004); *Cook v. Shoshone First Bank*, 2006 WY 13, ¶ 12, 126 P.3d 886, 889 (Wyo. 2006)). Even construing the facts in the light most favorable to Mr. Leonhardt and giving him every reasonable

---

[7] Mr. Leonhardt does not raise or rely on his February 20 conversation with Captain Cook.

9

inference from that evidence, there is no genuine dispute of material fact as to whether Sheriff Blackburn, Captain Cook, and the detention officers breached their duties to act reasonably and to provide him access to medical care on February 21 or at any time while Mr. Leonhardt was detained at the Jail. As a result, the district court correctly determined Sheriff Blackburn, Captain Cook, and the detention officers were entitled to summary judgment on the negligence claim. *Rice v. Collins Commc'n, Inc.*, 2010 WY 109, ¶ 10, 236 P.3d 1009, 1014 (Wyo. 2010) ("[A]bsent evidence that the defendant breached the duty by failing to exercise reasonable care, a claim of negligence is not sustainable.").

## II. Did the district court err by granting summary judgment in favor of Sheriff Blackburn, Captain Cook, the detention officers, the Big Horn County Sheriff's Office, and the Jail on Mr. Leonhardt's Fourteenth Amendment deliberate indifference claim?

[¶29] 42 U.S.C. § 1983 "creates a federal cause of action for damages to vindicate violations of federal law committed by persons acting under color of state law." *Garnett v. Coyle*, 2001 WY 94, ¶ 17, 33 P.3d 114, 120 (Wyo. 2001) (citation and quotation marks omitted). "This Court has concurrent jurisdiction with the federal courts over 42 U.S.C. § 1983 actions." *Wyo. Guardianship Corp. v. Wyo. State Hosp.*, 2018 WY 114, ¶ 14, 428 P.3d 424, 431 (Wyo. 2018) (citation omitted). "To establish a 42 U.S.C. § 1983 claim, a plaintiff must demonstrate (1) that he has been deprived of a right secured by the Constitution and laws of the United States; and (2) that the alleged deprivation was committed by a person acting under color of state law." *Garnett*, ¶ 17, 33 P.3d at 120 (citing *D.T. by M.T. v. Indep. Sch. Dist. No. 16 of Pawnee Cnty., Okla.*, 894 F.2d 1176, 1186 (10th Cir. 1990)).

[¶30] "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) (citation and quotation marks omitted). Because Mr. Leonhardt was a pretrial detainee, the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment, applies but the standards are the same under both amendments. *Est. of Beauford v. Mesa Cnty., Colo.*, 35 F.4th 1248, 1262 (10th Cir. 2022).

[¶31] The deliberate-indifference inquiry has two prongs, one objective and one subjective. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994)). Under the objective prong, the medical need must be "sufficiently serious." *Id.* (quoting *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977). For the subjective prong, the prison official must have a "sufficiently culpable state of mind." *Id.* (quoting *Farmer*, 511 U.S. at 834, 114 S.Ct. at 1977). The prison official must "know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference." *Id.* at 1262–63 (quoting *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979).

[¶32] Mr. Leonhardt argues the district court erred by granting summary judgment to Sheriff Blackburn, Captain Cook, the detention officers, the Sheriff's Office, and the Jail on his Fourteenth Amendment deliberate indifference claim because there were genuine disputes of material fact in dispute that should have been sent to the jury. He again relies on the February 21 incident and argues that if Nurse Stevens could be found to have purposefully ignored his serious medical need that day, then the jury could find the detention officers acted purposefully by ignoring him when he pushed the intercom button that day. He also claims there was "plenty of evidence" to submit to a jury that a lack of response to Mr. Leonhardt that day was purposeful.

[¶33] We have established that Mr. Leonhardt failed to show that Sheriff Blackburn, Captain Cook, and the detention officers were negligent on February 21. There was no evidence that they knew that Mr. Leonhardt was crawling on the floor in pain and kicking his cell door for help or that he had pushed the intercom button seeking medical care for his back pain. *Supra* ¶¶ 22, 23. As a result, Mr. Leonhardt cannot establish the subjective component of a deliberate indifference claim—knowledge of an excessive risk to inmate health or safety and disregard of that risk. *Est. of Beauford*, 35 F.4th at 1262–63 ("Deliberate indifference means 'the official *knows of* and disregards an excessive risk to inmate health or safety[.]'" (emphasis added) (quoting *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979)). *See also Garnett*, ¶ 19, 33 P.3d at 120 ("A showing of negligence, indeed even gross negligence, does not amount to a showing of 'deliberate indifference.'" (quoting *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292)). Because he did not demonstrate a constitutional violation, Sheriff Blackburn and Captain Cook were entitled to qualified immunity in their official capacities. *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) ("The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982))).

[¶34] With respect to the § 1983 claim against the Sheriff's Office and the Jail, Mr. Leonhardt was required to show that these entities had a policy or custom which played a part in the constitutional violation. *Boyer-Gladden v. Hill*, 2010 WY 12, ¶ 23, 224 P.3d 21, 30 (Wyo. 2010) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978))). *See also Kramer v. Wasatch Cnty. Sheriff's Off.*, 743 F.3d 726, 758–59 (10th Cir. 2014) ("As to institutional

11

liability under § 1983, the County can only be liable for the actions of [its employee] if it had a custom, practice, or policy that encouraged or condoned the unconstitutional behavior . . . ." (citing *Monell*, 436 U.S. at 691–94, 98 S.Ct. at 2036–38)).  Mr. Leonhardt did not show a constitutional violation and does not challenge on appeal the district court's determination that he failed to establish that a custom or policy of the Sheriff's Office or the Jail caused a violation of his constitutional rights.  *Pettengill v. Castellow*, 2022 WY 144, ¶ 24, 520 P.3d 105, 113 (Wyo. 2022) ("We 'will not frame the issues for the litigants and will not consider issues not raised by them and not supported by cogent argument and authoritative citation.'" (quoting *Statzer v. Statzer*, 2022 WY 117, ¶ 24, 517 P.3d 574, 581–82 (Wyo. 2022) (quoting *Ross v. State ex rel. Dep't of Workforce Servs.*, 2022 WY 11, ¶ 24, 503 P.3d 23, 31 (Wyo. 2022)))).

## *CONCLUSION*

[¶35] The district court correctly granted summary judgment to Sheriff Blackburn, Captain Cook, and the detention officers on Mr. Leonhardt's negligence claim and to Sheriff Blackburn, Captain Cook, the detention officers, the Sheriff's Office, and the Jail on his Fourteenth Amendment deliberate indifference claim.

[¶36]  Affirmed.